ROANE, Judge.
This is an action of ejectment, and the question depends upon the construction of the will of Richard Hill, (dated 3d October, 1774,) who died in the year 1775.
The clause on which the question turns, is to tho following effect; "I give to my son T Hill, all my lands on *302 the north side of Nottoway river, in Sussex, to him and his heirs and assigns forever, as also my lands in Brunswick to him and his heirs forever; but, in case he dies without a lawful heir, my will is, my lands in Brunswick only, (the premises in question,) should descend to my son Richard Hill and his heirs forever, as also the following slaves, &c.”
Similar dispositions are also made to his two sons, Green Hill and Richard Hill, with precisely the same limitations over to Thomas Hill and his heirs forever in both cases. I infer from this latter circumstance, that Thomas Hill and his family were rather favorites of the testator.
Another disposition is made to his daughter Rebecca, of slaves, &c. and if she died without a lawful heir, or under twenty-one, her slaves, &c. to be equally divided among the remaining children.
. Thomas Hill, having died in 1795, without having been married, or leaving lawful issue at the time of his death, the question arises under the clause just stated, what estate the said Thomas Hill took in the premises.
The counsel for the appellants, finding their cause desperate in any other view of the subject, relied strongly upon a supposed decision of Lord Kenyon, shaking the authority of Forth v. Chapman. That they could have found any grounds for such an attempt, I confess, surprized me. Not fully acquainted with the merits and character of that Judge, I yet thought it strange, that he who has been profuse in his admiration of Lord Holt; who has diverged from the liberal decisions of Lord Mansfield; who has declared, in appropriate and emphatical terms, the duty of a Judge to be dicere et non dare jus, should be prompt at innovation upon the settled rules of property.
But, in fact, the case relied on by the gentlemen does not bear them out: The determination, therein imputed to that Judge, is afterwards disavowed by him, as a Judicial opinion, in Roe v. Jeffery, 7 T. R. 595; and the distinction taken in Forth v. Chapman, is admitted, and acted upon by him in a subsequent case of Daintry v. Daintry, [6 T. R. 307.]
This supposed, and single, deviation from that case, being thus removed, it is unnecessary for me to quote instances from the books, wherein its authority has been often and solemnly recognized.
*303 In Forth v. Chapman, it was decided, that if freehold and leasehold lands be devised to A. and if he die leaving no issue of his body, then to the daughter of his brother, and children of his sister, this devise should be expounded to imply an indefinite failure of issue as to the freehold lands, and be restricted to issue, living at the death, as to the leasehold, and the words be considered as if they had been repeated by two several clauses.
The object of the gentlemen was to explode the distinction, as relative to freehold lands.
The reason of this distinction is, that the words are so understood in relation to real estate, in order to create an estate-tail in favor of the issue, who are capable of taking an inheritance, but, with respect to a term, that construction cannot benefit them; for a term cannot descend to them. 2 Fearne on Rem. 231: Notwithstanding, however, this diversity, from whence may be inferred a general difference of intention, as relative to the two subjects, yet it has never been held that a restrictive construction shall take place, even in relation to chattels, unless there be a particular intention inferrable from the will favoring such construction. Slight circumstances, indeed, have been laid hold of to produce this effect, such as the words, “ leaving,” “then,” “a limitation to a person in esse for life, &c.” but yet there must he some such.
I lay it down, then, as an incontrovertible position, that words importing a limitation in tail are taken in their legal sense, as to real estate, under circumstances in which they would be taken in their vulgar sense as applying to chattels;* and, that when they are taken in the latter sense, as applying to the latter subject, it is not from the general intention of the testator inferrable from the diversity just stated; but, from a particular intention appearing in the will itself, coming in aid of the former.
Bearing in. mind this distinction, and the ground of it, let us examine the present case.
If the subject of the devise in question had even been personal estate, I see no grounds whereon we could restrict the limitation to mean issue' living at the death. The words of the devise are appropriate and emphatical, to import an estate-tail, and there is an absence of all words, such as leave, then, fyc. which have frequently *304 been resorted to, for the purpose of inferring a particular intention.
Great stress is, however, laid upon the expression if he die without a lawful heir, as indicative of an intention to restrict: But, there is nothing in it. Those words standing singly, are fully competent to convey an estate in fee, or tail, with reference, as the case may bo, to the person in remainder; that is, whether he can be a collateral heir or not.
The word heirs or heir is nomen colleclivum. No case is recollected, where the distinction now set up was taken. The case of Goodtitle v. Pegden, 2 T. R. 720, was as to this point, substantially like that before us. “Lawful heir,” was there construed to mean, issue of his body; and it is believed that, if issue were substituted in this will, the objection would not have been made. In that case, it is true, the words were considered as restricted, and the limitation over good: But, the word leaving, was also there, and the Court in their opinion laid no stress upon the word heir being in the singular number.
If it be said, that the expression in our case is tantamount to the words not leaving: I answer, that it is equipollent, at most, to the expression not having: which is considered by Lord Kenvon in Weakley v. Rugg, 7 T. R. 326, as essentially different from not leaving.
It is observable also, that in the devise of slaves to Rebecca, the testator not only omits the words to her and her heirs for ever, but adds the contingency of her dying under 21, a circumstance denoting restriction, and limits the remainder to be equally divided among the remaining children: Thereby, perhaps, throwing .the case of this bequest within the reason on which the cases of Hughes v. Sayer; Nichols v. Skinner; Higgenbotham v. Rucker, and others, are decided.
But, the subject of the present devise is not personal estate, but land. As to this subject, the general intention is in favor of an estate tail.’ The words used are entirely adequate to.that purpose; and, there are no grounds whereon to infer a particular contrary intention, but the converse; such as the different phraseology used in the bequest to his daughter Rebecca, and the circumstances before stated, shewing Thomas Hill and his family, to have been favorites of the testator. I am, therefore, of opinion, that the judgment ought to be affirmed
*305 FLEMING, Judge.
The first part of the devise to Trio's Hill and his heirs was turned into an estate tail by the subsequent words in case my said son Tiio’s Hill dies without a lawful heir; for, the latter words plainly mean an heir of his body, as he could not die without an heir whilst his brother Richard was living. But, it is said, that the words dies 'without a lawful heir, meant if he died without leaving issue at the time of his death. There is, however, a distinction in this respect between lands and personal estate: In the latter, the words are taken in the vulgar sense, but in the former, the legal sense prevails; that is to say, they are construed to mean a failure of issue generally. [Denn v. Shenton,] Cowp. 410. It is true that Lord Kenyon in Porter v. Bradley, 3 T. R. 143, appears to have hesitated at the distinction; but, the doctrine is too fully established to be overturned by a single decision. The rule is inflexible, that a limitation after a dying without issue generally, creates an estate-tail, unless it be controled by restrictive words clearly manifesting an intention to coniine it to a dying without issue living at the death of the devisee, or some other reasonable period: And, as there are no such words in the present case, I am of opinion that the legal sense must be adhered to, and that Thomas took an estate-tail; which was turned into a fee-simple by the act of 1776, for docking entails. The result is, that the judgment of the District Court is right, and ought to be affirmed.
CARRINGTON, Judge.
The Judges who have preceded me have exhausted the subject; and, therefore, I have only to add, that I concur in the opinion that Thomas Hill took an estate-tail; which, by the act of 1776, was turned into a fee-simple: Of course, the judgment of the District Court is right, and ought to be affirmed.
LYONS, Judge.
I have always thought the distinction between lands and personal estate to have been settled by the case of Forth v. Chapman; and that it was certain that a limitation over of lands after a general dying without issue, created an estate-tail. Fearne on Rem. 363. It is to no purpose to be arguing about the intention, unless the words will authorise a, restricted construction; for, mere intention cannot prevail against a settled rule of interpretation, which has iixed an appropriate sense to particular words; because, when the sense is once imposed, *306 they become the indicia of the testator’s mind, until the, contrary is shewn by countervailing expressions. Harg. L. Tracts, 508. It is better that it should be so too: For, the law ought to be certain; and, when the rule is once laid down, it should be adhered to: Otherwise, what is called liberality, at the bar, will degenerate into arbitrary discretion, and all must depend upon the will of the Judge.* None of the cases cited by the counsel for the appellant, contravene the settled doctrine. That of Porter v. Bradley, which was most relied on, evidently does not; for, the words leaving issue, there, essentially varies it from this case: And, all the other decisions, both before and since, have so firmly established the construction in favor of the entail, that it has now become a canon of property, which it would be dangerous for the Court to alter. The Legislature, by the act for docking entails, plainly understood it in this manner; and, therefore, they left the construction as it was before, but turned the entail, when created, into a fee simple. An infringement of the rule, then, instead of supporting the Legislative intention, would go directly to defeat it; and would tend, under the notion of executory devises, to introduce that very clog to alienation, which the statute meant to abolish. Consequently, finding nothing in this ease to take it out of the general rule, I think that Thomas Hill took an estate-tail, which, by virtue of the act of 1776, was turned into a fee simple, and, therefore, that the judgment of the District Court is right.
Judgment affirmed.†

[* Benn v. Shenton, Cowp. 410; Crooke v. De Vanders, 9 Ves. jun. 197; Anderson v. Jackson, 16 Johns. R. 382.]

[* "The discretion of a Judge is the Law of Tyrants 5 it is always unknown ; it is different in different men ; it is casual, and depends upon constitution, temper and passion. In the best, it is oftentimes caprice; in the worst, it is every vice, folly, and passion, to which human nature is liable.” Per Sir Charles Pratt, (afterwards Lord Camden,) in his celebrated opinion, in the case of Doe, dem. Hindson et ux. et al. v. Kersey, Com. Bench. 1765.]

[† See Carter v. Tyler, 1 Call, 187, and authorities there cited.]